DANIEL J. BERGESON, Bar No. 105439
dbergeson@be-law.com
HWAY-LING HSU, Bar No. 196178
hhsu@be-law.com
JULIA CHUNG, Bar No. 253358
jchung@be-law.com
BERGESON, LLP
303 Almaden Boulevard, Suite 500
San Jose, CA 95110-2712
Telephone: (408) 291-6200
Facsimile:  (408) 297-6000

Attorneys for Plaintiff
ACTUATE CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ACTUATE CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON MUTUAL BANK, a Washington corporation,<br><br>Defendant. | Case No. C08-2918 SI<br><br>**NOTICE OF MOTION AND MOTION TO STRIKE AFFIRMATIVE DEFENSES; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br>[Fed.R.Civ.P. 12(f)]<br><br>Date: October 17, 2008<br>Time: 9:00 a.m.<br>Place: Courtroom 10<br>      Hon. Susan Illston<br><br>Complaint Filed:   June 11, 2008<br>Trial Date:        None Set |

**NOTICE OF MOTION AND MOTION**

TO DEFENDANT AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on October 17, 2008, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Hon. Susan Illston, United States District Judge, in the United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California, plaintiff Actuate Corporation ("Actuate") shall and hereby does move the Court for an order striking affirmative defenses set forth in the Answer to Complaint for Breach of Contract and Copyright Infringement ("Answer") filed by defendant Washington Mutual Bank ("WaMu").

The motion is made pursuant to Rule 12(f) of the Federal Rules of Civil Procedure on the grounds that the affirmative defenses have not been pled such as to give Actuate fair notice of the defenses raised and their grounds.

This motion is based upon this notice of motion and motion, the supporting memorandum of points and authorities, the complete files and records in this action, and such additional evidence and argument as may hereinafter be presented.

**ISSUE PRESENTED**

1.  Whether the Court should strike seventeen affirmative defenses in the Answer pursuant to Federal Rules of Civil Procedure 12(f).

**MEMORANDUM OF POINTS AND AUTHORITIES**

Actuate respectfully submits the following memorandum of points and authorities in support of its motion to strike affirmative defenses set forth in the Answer.

**I.    INTRODUCTION AND BACKGROUND**

Actuate alleges the copying and misuse of its computer software by Washington Mutual Bank, a licensee of Actuate's software.

Actuate develops and licenses computer software, including its Actuate 8.0 software (and earlier versions thereof). The Actuate iServer, eReport Option, eSpreadsheet Option and Actuate Developer Packs are modules included within the Actuate 8.0 software covered by Actuate's copyrights.

1    WaMu has licensed software from Actuate since 2001.

2    On October 13, 2004, pursuant to a signed Purchase Authorization Letter ("PAL"), WaMu agreed to purchase from Actuate licenses to Actuate's iServer, eReport Option, eSpreadsheet Option and Developer Pack software (the "Actuate Software") for a specific number of "Named Users." Under the terms of the PAL, WaMu's license entitled:

- 100 "Named Users" to use "iServer w/eReport Option" in a "Production Environment"
- 25 "Named Users" to use "eSpreadsheet Option" in a "Production Environment"
- 100 "Named Users" to use "iServer w/eReport Option" for "Testing Use Only"
- 25 "Named Users" to use "eSpreadsheet Option" for "Testing Use Only"
- 1 Named Developer to use a "Developer Pack" for "Development Environment Use Only"

The PAL defines "Named User" as follows:

> A Named User shall mean an individual person who receives any content generated by the Actuate iServer. The individual may be authorized to access the iServer to view reports and/or information content that is managed by the iServer, they may receive content via email or they may receive printed content generated by the iServer. A Named User license allows only a specific number of Named Users to access the iServer or view reports/information content generated by the iServer. No other users are licensed to access the server or view reports/information content generated by the server at any time. Each Named User License block comprises a specified number of named user licenses and is available in block increments only. Named User licensing is charged on a *per user, per iServer System* (an iServer System is a stand-alone or clustered iServer). Thus each individual person must have a separate Named User license for each iServer being accessed or from which any content is received. If Licensee is using Actuate Multi-Application Option or Online Archive Option, a separate Named User license is required for each additional Encyclopedia Volume (i.e.; application) that an individual person accesses or receives content from within an iServer System.

WaMu also agreed to the terms of the click-wrap license, which was included with the Actuate Software provided to WaMu, as part of the installation process for the Actuate Software. The click-wrap license agreement contains a definition for "Named User" that is substantively identical to the definition contained in the PAL.

In February 2008, WaMu asked Actuate to perform a service call relating to the Actuate Software. During the service call, Actuate discovered that WaMu's use of the Actuate Software far exceeded the use to which WaMu was entitled under its license with Actuate.

Actuate alleges that WaMu has been allowing hundreds of people to access the Actuate Software and has been providing tens of thousands of people with reports and/or information content managed or generated by the Actuate Software. Under the definition of "Named User" in the PAL and the click-wrap license agreement, all of those persons are "Named Users" whose use of the Actuate Software must be licensed and paid for.

On June 11, 2008, Actuate filed this action against WaMu for breach of contract and copyright infringement.

On August 7, 2008, WaMu filed its Answer. The Answer contains 18 affirmative defenses, 17 of which are conclusory in nature and inadequately pled. Actuate hereby moves to strike these 17 affirmative defenses as set forth below.

## II. ARGUMENT

### A. Legal Standards for a Motion to Strike Pursuant to FRCP 12(f).

Rule 12(f) of the Federal Rules of Civil Procedure provides in relevant part that "[u]pon motion made by a party before responding to a pleading . . . the court may order stricken from any pleading any insufficient defense . . ." Fed. R. Civ. Pro. 12(f).

A district court has discretion to strike from any pleading a defense which it regards as insufficient under Rule 12(f). *See, Security People, Inc. v. Classic Woodworking, LLC*, No. C-04-3133MMC, 2005 WL 645592, at *1-2 (N.D. Cal. 2005). The purpose of a Rule 12(f) motion to strike "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial ...." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *citing Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983), *rev. on other grounds*, 510 U.S. 517 (1994).

Rule 8(c) of the Federal Rules of Civil Procedure requires that an affirmative defense be "set forth affirmatively" in the party's responsive pleading. Fed. R. Civ. Pro. 8(c); *Wyshak v. City National Bank*, 607 F.2d 824, 827 (9th Cir. 1979). Affirmative defenses are governed by the same pleading standards as complaints. *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049 (N.D. Cal. 2004). A claimant must provide "fair notice" of the claim and grounds on which it

rests. *See, Qarbon.com*, 315 F. Supp. 2d at 1048. A defendant must also give "fair notice" of a defense. *Wyshak*, 607 F.2d at 827.

Although an extensive recitation of facts supporting the defense is not required, the elements of that defense must be set forth with some particularity. *Sun Microsystems, Inc. v. Dataram Corp.*, No. CIV. 96-20708SW, 1997 WL 50272, at *1, *4 (N.D. Cal. 1997) (holding that affirmative defenses must set forth elements of the defense); *see e.g., Allen v. A.H. Robins Co., Inc.*, 752 F.2d 1365, 1371, n. 3 (9th Cir. 1985) (equitable estoppel defense sufficiently pleaded where "litigant pleads all of the elements of equitable estoppel in a defensive pleading"). Importantly, Rule 12(f) motions are appropriate where affirmative defenses contained "nothing but bare bones conclusory allegations" and "failed totally to allege the necessary elements of the alleged claims." *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294-95 (7th Cir. 1989).

A motion to strike is also appropriate when, based on the facts alleged, the affirmative defense is insufficient as a matter of law. *Security People*, 2005 WL 645592, at *3; *see also, Heller*, 883 at 1294 (affirmative defenses stricken where legally insufficient on the face of the pleadings).

**B.    The Court Should Strike WaMu's Affirmative Defenses for Failing to Sufficiently Plead the Required Elements of the Defense and Provide "Fair Notice" to Actuate.**

WaMu has pled 18 affirmative defenses, 17 of which fail to provide Actuate with fair notice of the grounds upon which they are based. These affirmative defenses are each stated in just one conclusory sentence and fail to include any facts establishing the elements or grounds for the defense.

**1.    WaMu's Breach of Contract Defenses Are Insufficient and Should be Stricken.**

The second affirmative defense alleges that the Complaint is barred by "Actuate's failure to perform its contractual obligations." This defense fails to identify the specific contractual obligations arising under the license agreement that Actuate has purportedly failed to perform.

The third affirmative defense, alleging that "the terms of the contract as alleged by Actuate were not the product of a meeting of the minds," fails to state the necessary elements of this defense. *See, Merced County Sheriff's Employees' Association v. County of Merced*, 188 Cal. App. 3d 662, 670 (1987) (There is no meeting of the minds "if the parties attach materially different meanings to their manifestations and (a) neither party knows or has reason to know the meaning attached by the other; or (b) each party knows or each party has reason to know the meaning attached by the other.")

The fourth affirmative defense, alleging that "the terms of the contract as alleged by Actuate are too indefinite and uncertain to constitute an enforceable contract," fails to allege in what respect the contract is indefinite or uncertain or that, as a result of the alleged indefiniteness or uncertainty, the obligations of the parties and whether they have been performed or breached cannot be ascertained. *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 209 (2006) ("[i]f...a supposed 'contract' does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, there is no contract.")

The fifth affirmative defense, alleging that "the contract as alleged by Actuate was entered into under a mistake as to the underlying facts and is therefore rendered unenforceable," fails to identify the alleged mistake as to facts. This defense further fails to allege that Actuate had reason to know of or caused the alleged mistake as to facts, and fails to state the elements required to obtain a rescission of the contract based on the mistake. *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 282 (2001) ("Where the plaintiff has no reason to know of and does not cause the defendant's unilateral mistake of fact, the defendant must establish the following facts to obtain rescission of the contract: (1) the defendant made a mistake regarding a basic assumption upon which the defendant made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to the defendant; (3) the defendant does not bear the risk of the mistake; and (4) the effect of the mistake is such that enforcement of the contract would be unconscionable.")

The sixth affirmative defense, alleging that "the contract as alleged by Actuate contains a material latent ambiguity, not obvious at the time the contract was entered into," fails to identify the alleged ambiguity and does not offer an alternative reasonable construction of the alleged ambiguous contractual language. *Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 525 (2002) (contractual language is "ambiguous *only* if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms.")

The seventh affirmative defense, alleging that the cause of action for breach of contract is "preempted and/or abrogated, in whole or in part, by the Federal Copyright Act, 17 U.S.C. § 101, *et seq.*," fails to provide Actuate with fair notice of the claims and grounds upon which it is based because no allegations are made supporting preemption.

### 2. The Remaining Affirmative Defenses Are Likewise Insufficient Because They Fail to Set Forth the Elements of the Defense and Fail to Allege Any Supporting Facts.

The first affirmative defense asserts that the Complaint "fails to state claims against Washington Mutual upon which relief can be granted." This defense fails to provide Actuate with fair notice and is devoid of any supporting facts.

The eighth affirmative defense asserts that the Complaint is barred by "the doctrine of copyright misuse." This defense fails to provide Actuate with fair notice or allege that Actuate seeks to control areas outside its grant of copyright monopoly. *See, Qarbon.com*, 315 F. Supp. 2d at 1049 ("reference to a doctrine, like reference to statutory provisions, is insufficient notice"); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (the copyright "misuse defense prevents copyright holders from leveraging their limited [copyright] monopoly to allow them control of areas outside the monopoly").

The ninth affirmative defense asserts that the Complaint is barred by "the doctrine of fair use" pursuant to 17 U.S.C. § 107. This defense fails to provide Actuate with fair notice or identify, specifically, WaMu's fair uses of the Actuate Software. *See, Qarbon.com*, 315 F. Supp. 2d at 1049 ("reference to a doctrine, like reference to statutory provisions, is insufficient notice"); *Napster, Inc.*, 239 F. 3d at 1014.

The tenth affirmative defense asserts that "Washington Mutual made additional copies and/or adaptations of software pursuant to 17 U.S.C. § 117." This defense fails to allege a necessary element under the statute. *See*, 17 U.S.C. § 117(a) (that the additional copies and/or adaptation were "[1] created as an essential step in the utilization of the computer program in conjunction with a machine and that it is used in no other manner," or alternatively, "[2] for archival purposes only and that all archival copies are destroyed in the event that continued possession of the computer program should cease to be rightful.")

The eleventh affirmative defense asserts that "Actuate knew, should have known, and/or was fully advised concerning the matters alleged in the Complaint, and thus Actuate is precluded from asserting any such claims against Washington Mutual." WaMu has failed to set forth any specific facts supporting these assertions, or any authority for the defense itself.

The twelfth affirmative defense asserts that the Complaint "is barred by Actuate's own consent, conduct and/or wrongful acts." WaMu has failed to set forth any specific facts supporting the assertions, or any authority for the defense itself.

The fourteenth affirmative defense asserting waiver fails to identify the known right that Actuate waived and fails to allege that Actuate did so with "knowledge of its existence and the intent to relinquish it." *See, Napster, Inc.*, 239 F.3d at 1026.

The fifteenth affirmative defense asserting unclean hands fails to allege an essential "unconscionable act" by Actuate with an "immediate and necessary relation" to the equity sought by Actuate in its complaint. *See, Hoffman-LaRoche, Inc. v. Promega Corp.*, 319 F. Supp. 2d 1011, 1028 (N.D. Cal. 2004).

The sixteenth affirmative defense asserting estoppel fails to state any of the "three important elements" of such claim. *See, A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992) ("[1] the actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence; [2] the other relies upon the communication; [3] and the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct.")

The seventeenth affirmative defense asserting laches fails to state facts establishing that

Actuate was prejudicially dilatory in asserting its claims for relief. *See, A.C. Aukerman Co.*, 960 F.2d at 1028-29 (laches defense requires allegations of "neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar.")

The eighteenth affirmative defense asserts that "Actuate failed to act reasonably or to use due diligence to avoid, minimize and/or mitigate its alleged damages." WaMu has failed to set forth any specific facts supporting this assertion.

### III.   CONCLUSION

For the reasons set forth above, each of these seventeen affirmative defenses is insufficient as pled for failure to allege facts establishing the elements or grounds for the defense. Accordingly, Actuate has not been provided fair notice, and respectfully requests that the Court grant its motion to strike WaMu's affirmative defenses.

Dated: August 27, 2008                    BERGESON, LLP

                                          By:_____/s/_____
                                                Hway-ling Hsu
                                          Attorneys for Plaintiff
                                          ACTUATE CORPORATION